UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| THOMAS HAGGERTY : <br> SUSANNAH BLOOD : <br> : <br> Plaintiffs, : <br> : <br> v. : <br> : <br> U.S. BANK NATIONAL ASSOCIATION AS : <br> TRUSTEE FOR STRUCTURED ASSET : <br> INVESTMENT LOAN TRUST MORTGAGE : <br> PASS THROUGH CERTIFIEDS, SERIES 2005-4; : <br> PHH MORTGAGE CORPORATION : <br> : <br> Defendants. : | C. A. No. 1:22-cv-00235-WES-PAS |

**DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

Defendants U.S. Bank National Association as Trustee for Structured Asset Investment Loan Trust Mortgage Pass Through Certifieds, Series 2005-4 ("U.S. Bank as Trustee") and PHH Mortgage Corporation ("PHH;" collectively "Defendants") move to dismiss the Complaint in this action filed by plaintiffs Thomas Haggerty and Susannah Blood ("Plaintiffs"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Complaint should be dismissed because Plaintiffs' claims present erroneous legal theories that have been repeatedly rejected by this Court, as well as Rhode Island state courts. Because there is no legal basis for any of the Complaint's claims, all three counts of the Complaint should be dismissed.

**STATEMENT OF FACTUAL ALLEGATIONS**

The following facts are alleged in the Complaint or set forth in "documents the authenticity of which are not disputed by the parties, official public records, documents central to the plaintiff's claim, and documents sufficiently referred to in the complaint." *See Wilborn v. Walsh*, 584 F. Supp. 2d 384, 386 (D. Mass. 2008) (quoting *Watterson v. Page*, 987 F.2d 1, 3-4 (1st Cir. 1993)).

1

The facts, as set forth herein, are, as they must be, taken in the light most favorable to Plaintiffs for the purpose of Defendants' Motion to Dismiss, but are neither admitted nor denied by way of this filing by Defendants.

I. **THE SUBJECT NOTE AND MORTGAGE.**

The Complaint alleges that on December 30, 2004, Plaintiffs granted a $238,000.00 promissory note ("Note") in favor of Option One Mortgage Corporation ("OOMC"). Complaint ("Compl.") ¶ 3 and Exhibit A thereto. The Note contained "a purported Allonge with a purported blank endorsement, which was executed prior to [Plaintiffs'] signing the note and prior to the closing." *Id.* The allonge was dated December 30, 2004, but Plaintiffs were given a three-business day right of rescission, and interest began accruing on the loan on January 6, 2005. *Id.* ¶¶ 3-5.

Also on December 30, 2004, Plaintiffs executed a mortgage ("Mortgage") in favor of OOMC, secured by real property located at 7 Nichols Road, South Kingstown, Rhode Island ("Property"). Compl. ¶¶ 1, 6 and Exhibit B thereto. Section 21 of the Mortgage provides that if Plaintiffs fail to make any payment when due, "all sums secured by [the Mortgage] and accrued interest thereon shall at once become due and payable at the option of the Lender ***without prior notice***, except as otherwise required by applicable law, and regardless of any prior forbearance." Compl. at Exhibit B (emphasis added). The Mortgage further provides that the mortgagee may invoke the statutory power of sale or any other remedies or actions permitted by applicable law after default. *Id.*

Through a series of assignments, U.S. Bank as Trustee owns the Note and Mortgage. *Id.* ¶¶ 7, 9, 10-17. On March 26, 2009, OOMC (under its new name, Sand Canyon Corporation ("Sand Canyon")) assigned the Mortgage to American Home Mortgage Servicing, Inc. ("AHMSI") by an assignment ("2009 Assignment") executed by Patricia A. Davis. *Id.* ¶¶ 9-10 and Exhibit C thereto

("2009 Assignment"). On September 7, 2012, AHMSI (under its new name Homeward Residential, Inc.) assigned the Mortgage to U.S. Bank as Trustee. Compl. ¶ 17 and Exhibit E thereto ("2012 Assignment").

Plaintiffs admit that they continue to owe approximately $270,000.00 on the Note and the secured property "has a value of close to $500,000.00." *Id.* ¶ 40.

## II.  DEFAULT, ACCELERATION, AND FORECLOSURE.

By failing to make regular monthly payments, the Plaintiffs breached various covenants and agreements in the Mortgage. Compl. ¶ 25. On May 8, 2020, Orlans, P.C. ("Orlans"), attorney for PHH, the loan servicer, sent a letter to Plaintiffs that informed them of the total amount secured by the Mortgage and of rights available to service members in active duty ("Acceleration Notice"). Compl. ¶¶ 36-38 and Exhibit G. The Acceleration Notice further provided that Plaintiffs "may have the right to reinstate the Mortgage Loan" and included a phone number to call to obtain reinstatement information. *Id.*

On July 20, 2020, Orlans sent Plaintiffs a notice of a foreclosure sale scheduled for September 9, 2020. Compl. and Exhibit F thereto. The foreclosure sale did not proceed on September 9, 2020, and on April 13, 2022, Orlans sent Plaintiffs another notice of foreclosure sale ("Notice of Sale") scheduled for June 3, 2022. *Id.* ¶ 28. The Complaint alleges that Orlans mailed the Notice of Sale by "[r]egular mail" and by "Certified Mail Electronic Receipt." Compl. ¶ 32.

## III.  ALLEGATIONS OF THE COMPLAINT.

Plaintiffs filed the Complaint against Defendants in the Superior Court of Rhode Island, Kent County, on June 2, 2022, Case No. KC-2022-0402, and obtained an ex parte temporary

restraining order to stay the June 3, 2022 foreclosure.[1]  Defendants timely removed the case to this Court on June 20, 2022.

Despite attaching the 2009 Assignment and the 2012 Assignment, every count of the Complaint asserts that U.S. Bank as Trustee does not own the Note and Mortgage.  Compl. ¶¶ 8, 45, 64-65, 77, 84-85.  The Complaint alleges that the 2009 Assignment is void based on statements made on March 18, 2009, by Dale Sugimoto, the alleged President of Sand Canyon, in an affidavit filed in the United States Bankruptcy Court for the Eastern District of Louisiana (the "Sugimoto Affidavit").  Comp. ¶¶ 12-15 and Exhibit D thereto.  The Sugimoto Affidavit states that Sand Canyon "does not own any residential real estate mortgages," but that its "present business involves dealing with litigation claims, including title issues."  Complaint, Exhibit D, ¶¶ 5-6.  Relying on the Sugimoto Affidavit, the Complaint alleges that the 2009 Assignment is void and did not convey the Note or Mortgage to AHMSI.  Id. ¶ 16.

The Complaint alleges that the 2012 Assignment was void because it "did not follow the statutory scheme for assignments."  Id. ¶ 18.  The Complaint also alleges that Sarah Hix, who signed the 2012 Assignment, "did not sign this document and was not a Vice President of Homeward Residential, Inc. but was an employee of Security Connections, Inc."  Id. ¶¶ 18-19.  Based on these claims, the Complaint asserts that the 2012 Assignment to U.S. Bank as Trustee "was void" and "did not convey [Plaintiffs'] mortgage."  Id. ¶ 18.

The Complaint also alleges that the June 3, 2022 foreclosure sale, which did not occur, violated Rhode Island law because the notices of sale was mailed to Plaintiffs by "[r]egular mail and by Certified Mail Electronic Receipt which is a type of mail different from Certified Mail

---

[1] Defendants have not yet conducted a foreclosure sale of the Property.

Return Receipt Requested." Compl. ¶ 32.  Notwithstanding the complaints about the method of mailing, the Complaint admits that Plaintiffs "***received***  mail regarding these foreclosures," apparently referring to the notices for foreclosure sales scheduled in September 2020 and June 2022.  *Id.* ¶ 53 (emphasis added).  The Complaint also alleges that the Acceleration Notice "deceptively" stated that Plaintiffs "may have the right to reinstate the Mortgage." Compl. ¶¶ 36-39.

Based on the above allegations, the Complaint makes the following claims against Defendants:

- Count I (Breach of Contract) alleges that U.S. Bank as Trustee failed to strictly comply with the terms of the Mortgage "by not having a valid assignment of mortgage and by not holding an endorsed note" which "renders void any attempt to" foreclose on the Plaintiffs' Property.  Compl. ¶ 45.  Count I further alleges that Plaintiffs never received "an acceleration notice in strict compliance with the terms of the note and the mortgage." *Id.* ¶ 48.

- Count II (Injunctive Relief) seeks to enjoin Defendants from conducting the June 3, 2022 foreclosure sale because the Acceleration Notice was not "strictly compliant with the terms of the mortgage," Plaintiffs "have not been provided a Notice of Sale in conformity with law," and "the fact that U.S. Bank [as Trustee] has not been assigned the mortgage nor is the holder of the note."  Compl. ¶ 64.

- Count III (Rhode Island Fair Debt Collection Practices Act ("RIFDCPA")) alleges that PHH violated the RIFDCPA because PHH "stated that U.S. Bank [as Trustee] could exercise the statutory power of sale" even though "the terms of the mortgage and note were not strictly complied with and the Plaintiffs were not provided a Notice of Sale by certified mail return receipt requested and U.S. Bank [as Trustee] did not have a valid conveyance of the mortgage by an assignment of mortgage." Compl. ¶ 77.  Count III further alleges that PHH took or threatened to take "any nonjudicial action to effect dispossession or disablement of property."  *Id.* ¶ 82.

For the reasons set forth below, the Complaint's factual allegations do not entitle Plaintiffs to recover under any of the above-enumerated causes of action against Defendants.  Accordingly, Defendants are entitled to dismissal of Plaintiffs' Complaint in its entirety.

128661265v.7

**STANDARD OF REVIEW**

Under *Federal Rule of Civil Procedure* 12(b)(6), a motion to dismiss should be granted if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556). When determining whether a claim has facial plausibility, a court must view a complaint in the light most favorable to the plaintiff, taking all well-pleaded allegations as true and giving the plaintiff the benefit of all reasonable inferences. *See Arruda v. Sears, Roebuck & Co.*, 310 F.3d 13, 18 (1st Cir. 2002); *Carreiro v. Rhodes Gill & Co.*, 68 F.3d 1443, 1446 (1st Cir. 1995); *Negron-Gaztambide v. Hernandez-Torres*, 35 F.3d 25, 27 (1st Cir. 1994). However, the court need not take allegations as true if they are "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 663. Rather, labels, conclusions, or a formulaic recitation of the elements of a cause of action will not do. *See Dartmouth Review v. Dartmouth Coll.*, 889 F.2d 13, 16 (1st Cir. 1989) (The court is not required to credit "bald assertions, unsupportable conclusions, and opprobrious epithets.") (citing *Chongris v. Bd. of Appeals*, 811 F.2d 36, 37 (1st Cir. 1987)); *see also Twombly*, 550 U.S. at 555 (2007) (a plaintiff must provide "more than labels and conclusion, and a formulaic recitation of the elements of a cause of action will not do").

Under this standard, a court should grant a defendant's motion to dismiss if the plaintiff's "well-pleaded facts do not possess enough heft to show that plaintiff is entitled to relief." *Rivera v. Pfizer Pharms., LLC*, 521 F.3d 76, 84 (1st Cir. 2008)). A plaintiff must therefore allege facts in support of "each material element necessary to sustain recovery under some actionable legal

theory." *Dartmouth Review*, 889 F.2d at 16 (quoting *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir. 1988)). Where it appears that a plaintiff has no cognizable claim and any attempts to amend would be futile, dismissal with prejudice is appropriate. *See Thomas v. Rhode Island*, 542 F.3d 944, 948 (1st Cir. 2008) ("The complaint must allege a plausible entitlement to relief in order to survive a motion to dismiss.") (internal quotation marks and citation omitted).

## ARGUMENT

**I.     COUNT I OF THE COMPLAINT SHOULD BE DISMISSED BECAUSE IT FAILS TO STATE A PLAUSIBLE CLAIM FOR RELIEF.**

Count I of the Complaint alleges that U.S. Bank as Trustee breached the Mortgage because it (A) "failed to strictly comply with the terms of the [N]ote and [M]ortgage," (B) lacked "a valid assignment of mortgage and" (C) does not "hold[] an endorsed note." Compl. ¶ 45.

As set forth below, each of these allegations fail because they have no legal basis and have been repeatedly rejected by both this Court, ***and*** Rhode Island state courts.

### A.     **U.S. Bank as Trustee Complied with the Terms of the Mortgage.**

The Complaint alleges that U.S. Bank as Trustee violated the terms of the Note and Mortgage in its efforts to foreclose because it failed to send a notice that the entire balance owed under the Note and Mortgage had been accelerated "in strict compliance with the terms of the note and the mortgage." Compl. ¶ 48. The Complaint alleges that because the Acceleration Notice stated that Plaintiffs "may have the right to reinstate the Mortgage Loan," it was "contrary to the terms of the [M]ortgage." Compl. ¶ 39. The Complaint does not allege how the Acceleration Notice failed to comply with the Note.

However, the Mortgage does not require Defendant to send Plaintiffs ***any*** notice informing them of any right to reinstate the mortgage after acceleration.[2] According to Section 21 of the Mortgage, upon Plaintiffs' failure to make payments when due, all sums secured by the Mortgage, "shall at once become due and payable at the option of the Lender ***without prior notice***." Compl., Exhibit B (emphasis added). The District of Rhode Island previously rejected an argument that a separate notice of acceleration was required under the terms of a similarly-worded mortgage. *Viera v. Bank of New York Mellon as Tr.*, No. CV 17-0523-WES-PAS, 2018 WL 4964545, at *2 (D.R.I. Oct. 12, 2018) ("The emphasized language ['without further demand'] suggests that no secondary notice of acceleration is required before Defendants could properly accelerate the loan and commence foreclosure proceedings, because such additional notice would effectively be 'further demand.'").

Further, there is nothing deceptive about the voluntary Acceleration Notice's statement that Plaintiffs "may have the right to reinstate the Mortgage Loan." Under Section 18 of the Mortgage, the Plaintiffs indeed ***may*** have the right to reinstate, depending on several circumstances listed in that paragraph. Compl., Exhibit B at ¶ 18. The right to reinstate under the Mortgage is not absolute. Because the Mortgage allows acceleration of the amounts due "without prior notice," the Acceleration Notice was not required and thus cannot fail to comply with any requirement of the Mortgage.

---

[2] Section 21 of this Mortgage does not have a requirement of sending a notice of default and right to cure, like this Court analyzed in *Martins v. Fed. Hous. Fin. Agency*, 214 F. Supp. 3d 163, 169 (D.R.I. 2016). Therefore, the Complaint does not—and cannot—allege that a Defendant failed to send a notice of default or that any notice of default failed to comply with the terms of the Mortgage.

8

Count I also makes the conclusory statement that U.S. Bank as Trustee failed to "strictly comply with the terms of the [N]ote." Compl. ¶ 45. However, the terms of the Note do not apply because the exercise of the power of sale is a right found in the Mortgage, not the Note. *Woel v. Christiana Tr.*, 228 A.3d 339, 345 (R.I. 2020) ("the right to exercise the power of sale is derived from the mortgage contract itself") (citing *Bucci v. Lehman Brothers Bank, FSB*, 68 A.3d 1069, 1085 (R.I. 2013); *Thurber v. Carpenter*, 18 R.I. 782, 784, 31 A. 5, 6 (1895)). While a creditor may pursue additional rights under a promissory note, it is the mortgage that acts as security and describes the notices that must be given before exercising the power of sale. *Bucci*, 68 A.3d at 1077 ("The promissory note evidences the obligation of the borrower to repay the monies that have been lent, and the mortgage (or mortgage deed) acts as security for that debt"). The Complaint is devoid of any factual allegations to support the claim that U.S. Bank as Trustee failed to comply with nonexistent terms of an inapplicable contract, the Note, to the foreclosure.

In sum, the Complaint fails to allege any plausible claim that U.S. Bank as Trustee failed to comply with the terms of the Note or Mortgage.

### B.    U.S. Bank as Trustee Had Authority to Foreclose on the Plaintiffs' Property.

Count I also alleges that the assignments of the Mortgage were not valid.[3] Compl. ¶ 45. However, U.S. Bank as Trustee became the mortgagee of the Mortgage by the 2009 Assignment and the 2012 Assignment. Compl., Exhibits B and C.

---

[3] A borrower lacks standing to challenge assignments unless the assignments are "invalid, ineffective, or void." *Mruk v. Mortg. Elec. Registration Sys., Inc.*, 82 A.3d 527, 536 (R.I. 2013) ("[A] mortgagor does not have standing to challenge shortcomings in an assignment that render it merely voidable at the election of one party but otherwise effective to pass legal title.") (quoting *Culhane v. Aurora Loan Servs. of Nebraska*, 708 F.3d 282, 291 (1st Cir. 2013)). "Specific to the mortgage context, a void mortgage assignment is one in which the putative assignor 'never properly held the mortgage and, thus, had no interest to assign.'" *Wilson v. HSBC Mortg. Servs.*, 744 F.3d 1, 10 (1st Cir 2014) (quoting *Culhane*, 708 F.3d at 291).

### 1. The 2009 Assignment is Valid.

The Complaint challenges the 2009 Assignment from Sand Canyon to AHMSI solely because the Sugimoto Affidavit stated that Sand Canyon "no longer owned any mortgages." Compl. ¶ 14, Exhibit D. The Sugimoto Affidavit does not state that Sand Canyon (that is, OOMC) was not named as the mortgagee of any mortgage anywhere in the country. Such an assertion would be beyond Mr. Sugimoto's personal knowledge. He could only have meant, based on his knowledge of Sand Canyon's business records, that Sand Canyon had previously sold or transferred the beneficial ownership of residential real estate mortgages. *See* Compl. ¶ 14 (Sand Canyon "no longer owned any mortgages"). If so, the 2009 Assignment to AHMSI in this case was proper, because the assignment of the mortgage properly followed the sale of the Note. *Mruk*, 82 A.3d at 537 ("plaintiff's argument that MERS could not have transferred legal title to its assignee because it was not also the holder of the note is unavailing").

Further, reliance on the Sugimoto Affidavit fails to the extent that it contradicts the land records, i.e., the Mortgage (*see* Compl., Exhibit B) and the 2009 Assignment (*see* Compl., Exhibit C), both of which establish that OOMC, now known as Sand Canyon, was the mortgagee of record on March 26, 2009, when the Mortgage was assigned. This Court can ignore the Complaint's legal conclusions that are contrary to the facts in public record. *See Clorox Co. Puerto Rico v. Proctor & Gamble Comm. Co.*, 228 F.3d 24, 32 (1st Cir. 2000) (when a document that is integral or explicitly relied upon in the complaint contradicts allegations in the complaint, the document trumps the allegations). The Complaint itself incorporates and attaches as an exhibit documents that establish that OOMC was the original mortgagee and does not allege any other assignments of record before the 2009 Assignment. *See* Compl. at Exh. C. Thus, Sand Canyon ***did*** have

something to assign—title to the Mortgage—contrary to Plaintiff's argument. *See* Compl. ¶¶ 16, 21.

The Complaint also ignores that the Sugimoto Affidavit affirms that Sand Canyon's "present business involves dealing with litigation claims, including title issues." Complaint, Exhibit D, ¶¶ 5-6. Executing assignments of mortgages held by OOMC to the correct owner of those mortgages is without a doubt precisely the "title issues" referred to in the Sugimoto Affidavit.

The Complaint does not raise any plausible allegations that the 2009 Assignment was void and it should be dismissed.

### 2. *The 2012 Assignment is Valid.*

Count I also alleges that the 2012 Assignment from AHSMI to U.S. Bank as Trustee is invalid. The Complaint alleges that the 2012 Assignment "did not convey [the] [M]ortgage" because the 2009 Assignment was void. Compl. ¶ 18. This argument fails for the reasons stated above – the 2009 Assignment validly assigned the Mortgage from OOMC to AHMSI.

Second, the Complaint alleges that the 2012 Assignment was not valid because "Sarah Hix did not sign this document and was not a Vice President of Homeward Residential, Inc. but was an employee of Security Connections, Inc." Compl. ¶ 19. This attack on the authority to execute an assignment is precisely the type of challenge that the Rhode Island Supreme Court and the First Circuit held a borrower lacked standing to raise. *Mruk*, 82 A.3d at 536 ("[A] mortgagor does not have standing to challenge shortcomings in an assignment that render it merely voidable at the election of one party but otherwise effective to pass legal title.") (*quoting Culhane*, 708 F.3d at 291).

11

In sum, the allegations of the Complaint and the exhibits thereto affirmatively demonstrate that U.S. Bank as Trustee is the current mortgagee of the Mortgage. The chain of assignments of the Mortgage was as follows:

- Plaintiffs executed the Mortgage in favor of OOMC on December 30, 2004. *See* **Exhibit B**.

- Sand Canyon (formerly known as OOMC) assigned the Mortgage to AHMSI on May 22, 2009. *See* **Exhibit C**.

- Mortgage was then subsequently assigned by AHMSI (under its new name Homeward Residential, Inc.) to U.S. Bank as Trustee on September 7, 2012. *See* **Exhibit E**.

The chain of assignments is complete. Plaintiffs have not set forth any other facts that would challenge U.S. Bank as Trustee's status as mortgagee or its entitlement to exercise the power of sale.

### C.  U.S. Bank as Trustee Does Not Need to Hold the Note.

The Complaint also alleges that U.S. Bank as Trustee cannot foreclose because it allegedly does not hold the Note.[4] However, the Rhode Island Supreme Court has repeatedly held that an entity does not need to be the owner of the promissory note to exercise the power of sale in the mortgage. *Pimentel v. Deutsche Bank Nat'l Trust Co.*, 174 A.3d 740, 745 (R.I. 2017) (*citing Bucci*, 68 A.3d at 1085-1087); *Leone v. Mortg. Elec. Registration Sys., Inc.*, 101 A.3d 869, 874 (R.I. 2014). An entity need only be the mortgagee in order to foreclose. *Id.* This Court, following the holdings of the Rhode Island Supreme Court, has repeatedly rejected the same arguments that

---

[4] This Court recently rejected a claim brought by the same counsel that a note was not properly indorsed when the date of the indorsement was the same day as the borrower's execution of the promissory note. *See U.S. Bank N.A. v. Shakoori-Naminy*, 17-cv-00394-WES-LDA, 2022 WL 16959978, *5 (Nov. 16, 2022). Thus, the assertion in Count I that U.S. Bank as Trustee cannot be the owner of the Note because the Note was indorsed on the same day the Plaintiffs executed the Note (Compl. ¶ 3) has no legal basis and must be dismissed.

12

Plaintiffs attempt to make in the instant case. *See Sophin In v. Mortg. Elec. Registration Sys., Inc.*, C.A. No. 11–330, 2015 WL 105775 (D.R.I. Jan. 7, 2015) (*McConnell, J.*) (rejected claim that mortgagee lacked authority to foreclose because it was not the note-holder had "no basis in law"); *Era v. Morton Cmty. Bank*, 8 F. Supp. 3d 66, 74 (D.R.I. 2014) (finding authority to foreclose based on assignments of the mortgage, not on ownership of the note); *Clark v. Mortg. Elec. Registration Sys., Inc.*, 7 F. Supp. 3d 169, 182 (D.R.I. 2014) ("MERS and its assigns can institute foreclosure even where the foreclosing entity does not hold an interest in the note"). Whether U.S. Bank as Trustee owns the Note is irrelevant to its ability to foreclose.

Therefore, Count I does not raise any plausible claim that U.S. Bank as Trustee breached the Mortgage by scheduling the prior foreclosure sale (which was cancelled), and should be dismissed with prejudice.

**II.  COUNT II OF THE COMPLAINT SHOULD BE DISMISSED BECAUSE IT FAILS TO STATE A PLAUSIBLE CLAIM FOR RELIEF.**

In Count II, Plaintiffs seeks to enjoin the foreclosure sale that was scheduled for June 3, 2022. Compl. ¶ 61. Plaintiffs claim they have a substantial likelihood of success because [A] "they have not been mailed an Acceleration letter strictly compliant with the terms of the mortgage and the note and [B] have not been provided a Notice of Sale in conformity with law and [C] the fact that US Bank [sic] has not been assigned the mortgage nor is the holder of the note." Compl. ¶ 64. None of these claims has any merit.

The Mortgage does not require a separate acceleration letter (*see* Section I.A., *supra*) and U.S. Bank as Trustee was assigned the Mortgage and therefore has the contractual right to exercise the power of sale without regard to the Note (*see* Section I.B., *supra*). The only remaining claim is whether U.S. Bank as Trustee provided Plaintiffs a Notice of Sale in conformity with Rhode

Island law.  Specifically, the Complaint alleges that the failure to request a physical return receipt, rather than an electronic return receipt, violates R.I. Gen. Laws § 34-27-4(b), which requires that notice be made in writing "by certified mail return receipt requested."  *See* Compl. ¶¶ 32-35.  Notably, Plaintiffs acknowledge that they actually received the Notice of Sale.  Compl. ¶ 53 (they "received mail regarding these foreclosures").

Rhode Island General Laws § 34-27-4 does not mandate the use of a ***physical*** return receipt; the statute merely that the notice of sale must be sent "by certified mail return receipt requested."  According to the United States Postal Service ("USPS"), an electronic return receipt is a return receipt and contains the same information as a physical return receipt, only in an electronic form.  See USPS, Domestic Mail Manual § 503.6.1.1 ("A return receipt may be purchased at the time of mailing and provides a mailer with evidence of delivery (to whom the mail was delivered and date of delivery), and information about the recipient's actual delivery address. A mailer purchasing a return receipt may choose to receive the return receipt by mail (PSForm 3811) or electronically"), available at https://pe.usps.com/cpim/ftp/manuals/dmm300/503.pdf#page=21, *see also Shaikh v. Patel*, No. 17SBQ4164508001MDV, 2021 WL 2311476, at *3 (Mass. Land Ct. June 7, 2021) (discussing different types of mail for providing notice).

Even if the statute were interpreted to require a physical return receipt, not an electronic receipt, such a technical challenge to the Notice of Sale would not affect the validity of the sale where Plaintiffs admit they received actual notice of the foreclosure.  *See Johnson v. QBAR Assocs*., 78 A.3d 48, 53 (R.I. 2013) (where homeowner received "actual notice of the petition" to

foreclose tax title, irregularities in the notice of the petition did not invalidate tax title).[5] The R.I. Superior Court has held that a technical violation of the requirements of R.I. Gen. Laws § 34-27-4(b) would not invalidate a foreclosure sale where the borrower received actual notice of the foreclosure sale. *FS Group RI, LLC v. HIF Lenders II, LLC*, No. PC 2016-0290, 2016 WL 1610974, at *5 (*Lanpher, J.*) (R.I. Super. Apr. 19, 2016) ("Borrower received actual notice of the foreclosure at its principal residence" but the notice was not also sent to the secured property.)

Moreover, Defendant cancelled the previous foreclosure sale and would have to send a new notice of sale in relation to a new sale date. Thus, Plaintiffs' claim to enjoin a foreclosure sale that did not happen is moot. *See Martins v. Fed. Hous. Fin. Agency*, 214 F. Supp 3d 163, 168 (D.R.I. 2016) ("[v]arious United States District Courts have held that rescinding a non-judicial foreclosure and initiating a judicial foreclosure renders a plaintiff's allegations of non-compliance with statutory requirements moot."); *see also Nash v. GMAC Mortg., LLC*, No. CA 10–493S, 2011 WL 2470645, at *13 (D.R.I. May 18, 2011) (holding that a cancelled foreclosure sale, without a rescheduled date, was enough to render plaintiff's request for an injunction as moot).

Therefore, Count II should be dismissed with prejudice.

### III.   COUNT III OF THE COMPLAINT FAILS TO ALLEGE PLAUSIBLE FACTS TO SUPPORT A CLAIM FOR A VIOLATION OF THE RIFDCPA.

Count III of the Complaint alleges that PHH violated the RIFDCPA by using "unfair and unconscionable means" and "false, deceptive and misleading representations" when attempting to collect a debt in violation of the RIFDCPA. Compl. ¶¶ 75-76. However, the only "[s]pecific[]" conduct that Plaintiffs complain about is the sending the Notice of Sale on behalf of U.S. Bank as

---

[5] Notably, the First Circuit considered the use of an electronic return receipt sufficient to satisfy the requirements of 24 C.F.R. § 203.604(d). *Donahue v. Fed. Nat'l Mortg. Ass'n*, 980 F.3d 204, 209 n.5 (1st Cir. 2020).

Trustee.  Compl. ¶¶ 77, 81.  Plaintiffs claim that PHH violated the RIFDCPA "for the reasons alleged in this complaint."  Compl. ¶ 86.  These allegations include (1) mailing the Notice of Sale by electronic receipt rather than paper return receipt (Compl. ¶ 77); (2) an improper exercise of the statutory power of sale by U.S. Bank as Trustee (Compl. ¶ 81); and (3) that PHH threatened to take non-judicial action to effect dispossession or disablement of property, despite no allegations of any attempt to conduct a self-help eviction (Compl. ¶ 82).  As discussed in Sections I and II above, there is no basis in fact or law to the arguments that mailing the Notice of Sale and requesting an electronic return receipt violates the law or that U.S. Bank as Trustee, as mortgagee, is not authorized to exercise the power of sale in the Mortgage.

Even if requesting an electronic return receipt for the notice of sale was not compliant with R.I. Gen. Laws § 34-27-4, and even if there were some problem with an assignment of the Mortgage that made the title in dispute, sending the Notice of Sale with such technical defects does not rise to the level of either a "false, deceptive, or misleading" or an "unfair or unconscionable" means to collect or attempt to collect a debt.  *See* R.I. Gen. Laws §§ 19-14.9-7, 19-14.9-8; *see also Pollard v. Law Office of Mandy L. Spaulding*, 766 F.3d 98, 103 (1st Cir. 2014) ("[a] debt collector will not be held liable based on an individual consumer's chimerical or farfetched reading of a collection letter."); *Ostreicher v. Chase Bank USA, N.A.*, No. 19-CV-8175 (CS), 2020 WL 6809059, at *6 (S.D.N.Y. Nov. 19, 2020) ("The FCRA was enacted to remedy real abuses in credit reporting, not for imaginative attorneys to advance farfetched, if not absurd, interpretations of the statute on behalf of unharmed debtors. The statute is a shield for debtors, not a sword for lawyers.").

Count III also contains the conclusory allegation that PHH violated R.I. Gen. Laws § 19-14.9-8 by "taking or threatening to take any nonjudicial action to effect dispossession or

16

disablement of property." Compl. ¶82. However, the Complaint fails to allege any facts to support this conclusory allegation, such as when or how PHH made these alleged threats to dispossess Plaintiffs' from the Property without commencing an eviction action or when or how PHH disabled the Property. Notably, the Notice of Sale states an intention to sell the Property on September 9, 2020, but does not mention possession of the Property at all – it does not even ask the Plaintiffs to leave the Property. Compl., Exhibit F.

Therefore, Plaintiffs have failed to set forth a plausible claim for a violation of the RIFDCPA. Count III should be dismissed with prejudice.

## CONCLUSION

The Complaint fails to allege plausible claims of breach of contract, injunctive relief, or a violation of the RIFDCPA. There is no plausible challenge to U.S. Bank as Trustee's ownership of the Mortgage. The Mortgage does not require a separate acceleration letter. R.I. Gen. Laws § 34-27-4 does not require a *physical* return receipt. Therefore, Defendants respectfully request that the Court dismiss the Plaintiffs' Complaint in its entirety and enter judgment in favor of Defendants.

Respectfully submitted,

U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE FOR STRUCTURED ASSET INVESTMENT LOAN TRUST MORTGAGE PASS THROUGH CERTIFIEDS, SERIES 2005-4 AND PHH MORTGAGE CORPORATION

By their Attorneys,

*/s/ Krystle G. Tadesse*
Joseph A. Farside, Jr. (#7559)
Krystle G. Tadesse (#7944)
Jeffrey C. Ankrom (#7663)
Alexandra G. Lancey (#10270)
LOCKE LORD LLP
2800 Financial Plaza
Providence, RI  02903
(401)-274-9200
(401) 276-6611 (Fax)
joseph.farside@lockelord.com
krystle.tadesse@lockelord.com
jeffrey.ankrom@lockelord.com
alexandra.lancey@lockelord.com

Dated: March 10, 2023

**CERTIFICATE OF SERVICE**

I certify that on the 10th day of March, 2023, this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be mailed to those indicated as non-registered participants.

John B. Ennis, Esq.
1200 Reservoir Avenue
Cranston, RI 02920

*/s/ Krystle G. Tadesse*

128661265v.7